LODGED
CLERK, U S DISTRICT COURT
JUN 1 1 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

FILED
CLERK U.S. DISTRICT COURT
JUL - 1 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| CARLO JOHNSON,<br><br>　　　　Petitioner,<br><br>　v.<br><br>VICTOR ALMAGER, Warden,<br><br>　　　　Respondent. | CV 07-6452-SGL (SH)<br><br>ORDER ADOPTING THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. Section 636(b)(1)(C), the Court has reviewed the Petition, all of the records and files herein and the attached Report and Recommendation of the United States Magistrate Judge, and has made a <u>de novo</u> determination of the Report and Recommendation. The Court concurs with and adopts the conclusions of the Magistrate Judge.

　　IT IS ORDERED that the Petition filed herein is dismissed with prejudice.

1

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by the United States mail on petitioner and counsel for respondent.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: 7-1-08

_/s/ Stephen G. Larson_
STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

FILED
CLERK U.S. DISTRICT COURT
JUN 11 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION

| | |
|---|---|
| CARLO JOHNSON, <br><br> Petitioner, <br><br> v. <br><br> VICTOR ALMAGER, Warden, <br><br> Respondent. | Case No. CV 07-6452-SGL (SH) <br><br> REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Stephen G. Larson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons stated below, the Petition for a Writ of Habeas Corpus should be denied and this action should be dismissed with prejudice.

## I. PROCEEDINGS

Petitioner, a prisoner in the custody of the California Department of Corrections, challenges a conviction in California Superior Court, Los Angeles County (Case No. BA271595).

On October 3, 2007, petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") herein. Respondent filed an Answer to the Petition on November 5, 2007. After receiving extensions of time, on February 11, 2008, respondent filed a Return to the Petition, wherein respondent contended that the Petition should be dismissed as a "mixed petition" based on petitioner's failure to exhaust an instructional error claim (the third claim alleged in the Petition). In a Minute Order issued on February 11, 2008, the Court (a) found that since that instructional error was noncognizable on federal habeas review, the exhaustion of state remedies requirement did not apply to the claim, and (b) ordered respondent to file a Supplemental Return to the Petition addressing the merits of the other claims alleged in the Petition.

After receiving extensions of time, respondent filed a Supplemental Return to the Petition on April 16, 2008. Petitioner (through counsel) filed a Traverse to the Supplemental Return on May 5, 2008.

Thus, this matter now is ready for decision.

## II. PROCEDURAL HISTORY

On January 20, 2005, a Los Angeles Superior Court jury found petitioner guilty of one count of first degree residential burglary. (Clerk's Transcript ["CT"] 103-05; 2 Reporter's Transcript ["RT"] 208). On December 12, 2005 (subsequent to the court's denial of petitioner's motion for a new trial), in a bifurcated bench trial,[1] the trial court found true the special allegation that petitioner had suffered a prior serious or violent felony conviction. (CT 57, 131, 152; 2 RT 241-42). On the same day, after denying

---

[1] Petitioner waived his right to a jury trial on the prior felony conviction allegation. (CT 87; 2 RT 200-02).

1 petitioner's motion to strike his prior "strike," the trial court sentenced petitioner in
2 accordance with California's "Three Strikes Law"[2] to state prison for eight years. (CT
3 151-54; 2 RT B-18--B-20, B-22--B-23).

4     Petitioner appealed his conviction to the California Court of Appeal, wherein he
5 alleged <u>inter alia</u> the same claims as the first and second claims alleged in the Petition
6 herein. (See respondent's Notice of Lodging of Documents ["Lodgment"] No. 1). In an
7 unpublished opinion issued on January 8, 2007, the California Court of Appeal affirmed
8 the judgment. (<u>See</u> Lodgment No. 2).

9     Petitioner filed a Petition for Review with the California Supreme Court, alleging
10 <u>inter alia</u> the same claims. (<u>See</u> Lodgment No. 3). On March 21, 2007, the California
11 Supreme Court summarily denied the Petition for Review without citation of authority.
12 (<u>See</u> Lodgment No. 4).

13
## III. FACTUAL BACKGROUND

15 1.   <u>The prosecution's case</u>

16     In September 2004, Sara Torres (who was seventeen or eighteen-years-old) lived with her parents and sisters in a ground-floor apartment in Los Angeles. Sara and her sisters slept in one of two bedrooms in the apartment. Sara's parents slept in the other room, which was adjacent to Sarah's room. Both bedrooms had a window, with a similar view, facing an alley. The alley was a place frequented by prostitutes and drug abusers. The bedroom windows had security bars that could be opened from the inside. The security bars on Sara's window were broken and could easily be opened from the outside "just by pulling them." The window did not have a screen. (<u>See</u> 2 RT 8-11, 38). On the night of September 20, 2004, Sara's window was open, while the security bars remained closed. At approximately midnight, while Sara was falling asleep, she heard a

---

[2]   Cal. Penal Code § 667(e)(1)(A) provides: "If a defendant has one felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

noise that sounded like somebody was trying to open the security bars to her bedroom. She got up and turned on the ceiling light in her bedroom. She looked out the window and saw a man standing outside, right next to the window -- there were no security bars between the man and her. She went to her parents' room and told her mother,[3] who was in bed, that someone was trying to get into the house. Sara then looked out her mother's open window (the security bars were intact) and saw petitioner standing at Sarah's window. When the man saw Sara looking out the window, he began walking toward her. (See 2 RT 8-9, 11-17, 48).

Sara closed her mother's window, ran to her own bedroom, and closed the window. She called the police. While waiting for the police, she repeatedly looked out her window, and saw petitioner standing there. Sara's mother also saw a man standing outside Sara's window. Sara saw petitioner try to open her window by pushing it with both his hands. Petitioner was not able to open her window. Petitioner said some things that made her believe he was under the influence of alcohol or drugs. Petitioner still was standing at her window when the police arrived. (See 2 RT 18-20, 33-35, 48-49, 55-56).

At approximately 12:30 a.m., Los Angeles Police Department Officer Spiro Roditis and his partner responded to a call regarding a burglary suspect in the area of Sara's family's apartment. Some young women directed the officers to the back of the apartment complex. Using his flashlight, Officer Roditis saw petitioner standing next to Sara's window. The security bars had been pulled about eight to ten inches from the window. Officer Roditis instructed petitioner to stop and to put up his hands. Petitioner appeared "startled." Petitioner looked directly at Officer Roditis, turned, and jumped a wall just south of the complex. Officer Roditis got on his radio and asked other officers to set up a perimeter. Police officers set up a perimeter. A helicopter and K-9 units were called to provide additional support. (See 2 RT 60-67, 69-70, 85).

At approximately 12:30 a..m., Officer Mike Peters and his dog "Adjo," members

---

[3] Sara's father was not in the apartment. (See 2 RT 9, 39).

of the Los Angeles Police Department K-9 unit, were dispatched to the area of Sara's family's apartment. Prior to the deployment of Adjo and another dog (with a separate handler), the Los Angeles Police Department air unit gave an announcement regarding the use of the dogs. Petitioner did not surrender prior to the deployment of the dogs. "Adjo" found petitioner nearby laying on the side walkway of a house. Petitioner was arrested. At the time of his arrest, petitioner gave a different name. There was no indication that the Petitioner was under the influence of alcohol or a controlled substance. (See 2 RT 67-68, 77-78, 83, 87, 90-98, 112-17).

The police conducted field show-ups of petitioner. Officer Roditis identified petitioner as the person who had been standing at Sara's window because he "got a very good look at him." Sara identified petitioner as the person she had seen outside her window because of "his face structure." Sara's mother said that petitioner was the same height as the man she had seen. (See 2 RT 26-27, 49, 67, 69, 109-12, 119).

2.  The defense case

Two latent palm prints recovered from the bars of Sara's window did not match petitioner's prints. (See 2 RT 120-134, 174)

## IV. PETITIONER'S CLAIMS

1. The trial court failed to instruct the jury on the intended target offenses, in violation of petitioner's Sixth Amendment right to a jury trial. (Petition at 5).
2. There was insufficient evidence to support petitioner's conviction. (Petition at 5).
3. The trial court failed to instruct the jury with the lesser included offense of attempted burglary, in violation of petitioner's right to due process. (Petition at 6).

## V. STANDARD OF REVIEW

The standard of review applicable to petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

Moreover, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1)(as amended).

Under the AEDPA, the term "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); see also Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision"). However, federal circuit law may still be persuasive authority in identifying "clearly established" Supreme Court law or in deciding when a state court unreasonably applied Supreme Court law. See Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir.), cert. denied, 531 U.S. 944 (2000).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. Williams, supra, 529 U.S. at 391, 413. A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537

1  U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); Williams, supra, 529 U.S.
2  at 405-06. When a state court decision adjudicating a claim is contrary to controlling
3  Supreme Court law, the reviewing federal habeas court is "unconstrained by
4  § 2254(d)(1)." Williams, supra, 529 U.S. at 406. However, the state court need not cite
5  the controlling Supreme Court cases, "so long as neither the reasoning nor the result of
6  the state-court decision contradicts them." Early, supra.
7      A state court decision involves an "unreasonable application" of clearly
8  established federal law if "the state court identifies the correct governing legal principle
9  from [Supreme Court] decisions but unreasonably applies that principle to the facts of
10 the prisoner's case." Williams, supra, 529 U.S. at 413; Woodford v. Visciotti, 537 U.S.
11 19, 24-27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). A federal habeas court
12 may not overrule a state court decision based on the federal court's independent
13 determination that the state court's application of governing law was incorrect, erroneous
14 or even "clear error." Lockyer, supra, 538 U.S. at 75. Rather, a decision may be rejected
15 only if the state court's application of Supreme Court law was "objectively
16 unreasonable." Id.; Woodford, supra; Williams, supra.
17     When a state court decision is found to be contrary to or an unreasonable
18 application of clearly established Supreme Court law, a federal habeas court "must then
19 resolve the [constitutional] claim without the deference AEDPA otherwise requires."
20 Panetti v. Quarterman, 127 S.Ct. 2842, 2858, 166 L.Ed.2d 682 (2007); see also Williams,
21 supra, 529 U.S. at 406 (when a state court decision is contrary to controlling Supreme
22 Court law, a federal habeas court is "unconstrained by § 2254(d)(1)"). In other words, if
23 a § 2254(d)(1) error occurs, the constitutional claim raised must be considered *de novo*.
24 Frantz v. Hazey, 513 F.3d 1002, 1012-15 (9th Cir. 2008); see also Rompilla v. Beard,
25 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).
26     When the state court has not provided a reasoned explanation for its denial of the
27 petitioner's claims, a federal court has no basis other than the record for knowing
28 whether the state court correctly identified the governing legal principle or was

extending the principle into a new context. See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000). Thus, "[f]ederal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.... Only by that examination may we determine whether the state court's decision was objectively reasonable." Id. at 982.

The same standard of objective unreasonableness applies where the petitioner is challenging the state court's factual findings under 28 U.S.C. § 2254(d)(2). See Buckley v. Terhune, 397 F.3d 1149, 1154 (9th Cir. 2005), aff'd en banc, 411 F.3d 688 (9th Cir. 2006), cert. denied, 127 S.Ct. 2094 (2007); Bruce v. Terhune, 376 F.3d 950, 954 (9th Cir. 2004); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004); Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000). A federal court first must undertake an "intrinsic review" of the state court's factfinding, which requires an examination of the state court's factfinding process and not its findings. Buckley, supra, 397 F.3d at 1154-55; Taylor, supra, 366 F.3d at 1000. "Intrinsic challenges to state-court findings pursuant to the 'unreasonable determination' standard come in several flavors, each presenting its own peculiar set of considerations." Taylor, supra, 366 F.3d at 1000-01 (listing, e.g.: "where the state court should have made a finding of fact but neglected to do so[;] ... where the state court does make factual findings, but does so under a misapprehension as to the correct legal standard[;] ... and, where the fact-finding process itself is defective."). If the state court's factfinding process survives the federal court's intrinsic review, or if the petitioner does not challenge the state court's factfinding process, the state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. Buckley, supra, 397 F.3d at 1155.

## VI. DISCUSSION

### A. Habeas relief is not warranted with respect to petitioner's insufficiency of the evidence claim.

Petitioner contends that the evidence was insufficient to support the first degree burglary conviction, because there was no evidence that petitioner acted with the **intent to commit theft or another felony**. According to petitioner, "In this case, there was no physical evidence of forced entry, no burglar tools were present, and [petitioner] made no attempt to climb into the apartment after he moved the security bars. On this evidence, the implicit finding of the jury that, at the time he moved the security gate, he intended to commit theft or some felony, was based on speculation." (Petition at 7; see Lodgment No. 1 at 13-21).[4]

The California standard for determining the sufficiency of evidence to support a conviction has been held by the California Supreme Court to be identical to the federal standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See People v. Johnson, 26 Cal.3d 557, 576, 606 P.2d 738, 162 Cal.Rptr. 431 (1980). Under this standard, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis added). In making this determination, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995); see also Jackson, 443 U.S. at 319, 324, 326.

Under California law, "every person who enters any room, apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal. Penal

---

[4] As noted by respondent, petitioner does not challenge whether the evidence was sufficient to find petitioner **entered** into the apartment.

9

1  Code § 459.
2      In rejecting petitioner's claim that the evidence was insufficient to support his
3  conviction, the California Court of Appeal reasoned that:
4      "Sufficient evidence and reasonable inferences therefrom support the finding
5      that [petitioner] possessed the requisite intent to commit theft when he moved the
6      security bars and handled the window of Sara's bedroom. During the late evening,
7      [petitioner] moved the security bars and tried to open the window of a stranger's
8      apartment. (*People v. Swenson* (1938) 28 Cal.App.2d 636, 639 ["[T]he intention
9      with which an accused person enters the room of another individual without
10     permission at an unusual hour of the night must be determined by the jury."].)
11     When confronted by police officers, [petitioner] fled and later gave a different
12     name. (*People v. Smith, supra,* 78 Cal.App.3d 698, 704 [intent to commit theft
13     may be inferred from flight].) These circumstances support the inference that
14     [petitioner] intended to commit a theft.
15         *In re Leanna W., supra,* 120 Cal.App.4th 735, is not helpful to [petitioner].
16     There, a ward persuaded a neighbor to open the home of the ward's grandmother.
17     Later, the ward hosted a party in the home, during which the teenaged party guests
18     consumed alcohol and damaged property. The reviewing court concluded that
19     insufficient evidence supported the finding that the ward had the requisite intent to
20     commit a theft or felony when she entered her grandmother's home. (*Id.,* at pp.
21     741-743.) By contrast, [petitioner] moved the security bars and attempted to open
22     the window of a stranger's apartment around midnight. When confronted by
23     police officers, [petitioner] fled and later gave a different name to officers."
24     (Lodgment No. 2 at 4-5).[5]

---

[5] Under <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), it may be presumed that the California Supreme Court, by its silent denial of petitioner's Petition for Review raising the same claims, did not intend to change the California Court of Appeal's reasoned decision rejecting them. <u>Ylst</u>, 501 U.S. at 803-04.

The Court has no basis for disagreeing with the California Court of Appeal's reasoning and conclusion. After considering the evidence presented at trial in the light most favorable to the prosecution, and resolving all conflicts in the evidence in the manner most favorable to the prosecution, the Court finds that a rational trier of fact could have found beyond a reasonable doubt that petitioner entered the apartment with the intent to commit theft.

Accordingly, the Court finds and concludes that the California courts' rejection of petitioner's insufficiency of the evidence claim neither was contrary to nor an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

Even reviewing petitioner's claim de novo,[6] the Court (after considering the evidence presented at trial in the light most favorable to the prosecution, and after resolving all conflicts in the evidence in the manner most favorable to the prosecution) finds and concludes that a rational jury could reasonably have found that the evidence was sufficient to establish beyond a reasonable doubt that petitioner entered the apartment with the intent to commit theft.

B. **Habeas relief is not warranted with respect to petitioner's claim concerning the trial court's failure to instruct the jury on the elements of the intended "target offenses."**

After the presentation of evidence, and prior to closing arguments, the trial court instructed the jury with CALJIC No. 14.50 as follows:

"The defendant is accused in Count 1 of having committed the crime of burglary.

---

[6] The Ninth Circuit has left open the question of whether insufficiency of the evidence claims are to be resolved under the standard of review set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA. See Bruce v. Terhune, 376 F.3d 950, 957 (2004); Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir.) (en banc), cert. denied, 543 U.S. 956 (2004).

11

This is a violation of Penal Code section 459. Every person who enters any building with the specific intent to steal, take and carry away the personal property of any value and with the specific intent to deprive the owner permanently of that property or with the specific intent to commit any felony is guilty of the crime of burglary which is a violation of Penal Code section 459. [¶] A building that's a structure with four walls and a roof does not matter whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a person entered a building; [¶] Two, at the time of the entry, that person had the specific intent to steal and take away someone else's property and intended to deprive the owner permanently of that property or had the specific intent to commit any felony." (2 RT 167-68; CT 95-96).

The trial court also instructed the jury with CALJIC No. 14.59 as follows:

"If you are satisfied beyond a reasonable doubt and agree unanimously that the defendant made an entry with the specific intent to steal or to commit any felony, you should find the defendant guilty. You are not required to agree as to which particular crime the defendant intended to commit when he entered." (2 RT 169; CT 96).

Petitioner contends that the trial court erred when it instructed the jury that petitioner should be found guilty of burglary if he entered with the specific intent to steal or to commit any felony. As he did in the California Court of Appeal, petitioner relies on People v. Failla, 64 Cal.2d 560, 564, 51 Cal.Rptr. 103 (1966), holding that "the court committed prejudicial error in failing to give a further instruction on its own motion defining "felony" and advising the jury which acts the defendant, upon entry, may have intended to commit would amount to felonies." Petitioner claims that "the failure to instruct the jury on the elements of the target offense was prejudicial error, in that it

invited the jury to speculate on what criminal conduct might meet the statutory requirement[.]" (Petition at 5; see Lodgment No. 1 at 7-13).

To merit relief when an allegedly erroneous jury instruction is given, petitioner must show that the "the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." Estelle v McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). Moreover, the allegedly erroneous instruction must be considered in the context of the instructions as a whole and the entire trial record (including arguments of counsel). See Estelle, supra; United States v. Frady, 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). When petitioner raised this claim on direct appeal, the California Court of Appeal rejected it, reasoning that:

> "The trial court should have omitted the instructional phrase "any felony" because no evidence or reasonable inference therefore exists that [petitioner] intended any felony other than theft. Nevertheless, the error is harmless beyond a reasonable doubt. (*People v. Hughes, supra*, 27 Cal.4th 287, 353.) The trial court instructed the jury to disregard any inapplicable instructions. (CALJIC No. 17.31.) Unlike *People v. Failla, supra*, 64 Cal.2d 560, no evidence exists that [petitioner] intended to commit any sexual felonies inside the apartment. An instruction upon any other felony would be "unguided speculation" and erroneous under the circumstances." (Lodgment No. 2 at 3).

Here, the California Court of Appeal's application of harmless error analysis was not contrary to clearly established federal law, as determined by the United States

Supreme Court.[7] Thus, the sole determination for the Court is whether the California Court of Appeal "applied harmless-error review in an 'objectively unreasonable' manner." See <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003). The Court finds that it did not. As noted by the California Court of Appeal, there was no indication that petitioner intended to commit any offense other than theft. Moreover, the trial court instructed the jury to disregard any inapplicable instructions (CALJIC No. 17.31). (<u>See</u> 2 RT 170; CT 96).

Accordingly, the Court finds that the California courts' rejection of petitioner's claim was neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

C. **Petitioner's claim that the trial court failed to instruct the jury with the lesser included offense of attempted burglary is not cognizable on federal habeas review; even if petitioner's claim were cognizable, he would not be entitled to federal habeas relief.**

Petitioner contends that the trial court failed to <u>sua sponte</u> instruct the jury on the lesser included offense of attempted burglary. Petitioner claims that, given the evidence that the family used the window as a way to get into the house, and that the fingerprints taken from the security bars did not match petitioner's, there was a "very high" probability that a properly instructed jury would have convicted petitioner of only attempted burglary. (Petition at 6; <u>see</u> Lodgment No. 1 at 21-27).

To the extent that petitioner is contending that the trial court had a duty to instruct the jury on the lesser-included offense of attempted burglary, his claim arguably is not even cognizable on federal habeas review. See <u>Keeble v. United States</u>, 412 U.S. 205, 213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)(where the Supreme Court made clear that it

---

[7] <u>See, e.g., California v. Roy</u>, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (holding that instructional errors that are "trial errors" are subject to harmless error analysis).

14

1 had never explicitly held, and was not holding, that the Fifth Amendment due process
2 clause guaranteed the right of a defendant to have the jury instructed on a lesser included
3 offense); see also, e.g., Solis v. Garcia, 219 F.3d 922, 928-29 (9th Cir. 2000), cert.
4 denied, 534 U.S. 839 (2001); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.
5 1998)("Under the law of this circuit, the failure of a state court to instruct on lesser
6 included offenses in a non-capital case does not present a federal constitutional
7 question."); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995)(noting that the Ninth
8 Circuit "has declined to find constitutional error arising from the failure to instruct on a
9 lesser included offense in a noncapital case," and that to hold otherwise would create a
10 new rule in violation of Teague v. Lane), overruled on other grds, Tolbert v. Page, 182
11 F.3d 677 (9th Cir. 1999).

12 The Ninth Circuit has observed that a "defendant's right to adequate jury
13 instructions on his or her theory of the case might, in some cases, constitute an exception
14 to the general rule" that the failure of a state trial court to instruct on lesser-included
15 offenses in a non-capital case does not present a federal constitutional claim. See Solis,
16 219 F.3d at 929 (citation omitted).

17 In Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002), cert. denied, 540
18 U.S. 963 (2003), the Ninth Circuit held that the petitioner's federal constitutional right to
19 due process was violated where the defense theory of the case was entrapment, and the
20 trial court in the second trial had refused to give an entrapment instruction. In Conde v.
21 Henry, 198 F.3d 734, 739-40 (9th Cir. 1999), the Ninth Circuit held that the petitioner's
22 federal constitutional right to due process was violated where there were two
23 inconsistent defense theories of the case -- first, that the petitioner was innocent, and
24 second, that the petitioner was guilty of kidnapping for the purposes of burglary but not
25 robbery -- and the trial court had refused to instruct the jury on the crime of simple
26 kidnapping in accordance with the second defense theory.

27 However, this case was not an instance of the trial court refusing to instruct the
28 jury on the defense theory of the case, as in Bradley and Conde. Indeed, as petitioner

15

acknowledged on direct appeal, his trial counsel did not even ask for an instruction on attempted burglary. (See Lodgment No. 1 at 22).

Moreover, unlike in Bradley and Conde, the evidence at petitioner's trial did not support giving the instruction petitioner contends should have been given. The California Court of Appeal found that an attempted burglary instruction would not have been warranted based on the evidence:

> "... Here there is no evidence that the crime was less than charged. Sara testified that she heard sounds of movement of the security bars covering the window. [Sara's mother] testified that the bars were closed late that evening. Officer Roditis testified that the security bars had been pulled away from the window. [Petitioner] penetrated the outer boundary of the apartment when he pulled away or moved the security bars. His act is an entry of the apartment building for purposes of section 459. (*People v. Valencia* (2002) 28 Cal.4th 1, 12 [penetration of area behind window screen amounts to entry of building]; *People v. Nible* (1988) 200 Cal.App.3d 838, 845 [same].) The evidence does not provide sufficient evidence of attempted burglary." (Lodgment No. 2 at 5-6).

Here, the Court concurs with the California Court of Appeal's reasoning and conclusion. Thus, to the extent that petitioner's claim is cognizable on federal habeas review, based on its own independent review of the record, the Court finds and concludes that the California courts' rejection of petitioner's claim was neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

## VII. RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the district court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing approving and accepting this Report and Recommendation; and (2) denying the Petition and dismissing this action with prejudice.

DATED: 6-11-08

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.